Mr. Nisely was denied his Sixth Amendment right to verdict by an impartial jury because of the implied bias of Juror Armstrong. After 12 jurors were seated but not sworn, Juror Armstrong... We know all about that. Let me ask you a question. At that point, at the time the jury was sworn in, did the defendant have any preemptory challenges that had not been used? A review of the record would suggest that the preemptory challenges had been used, Your Honor, and they had made the challenge to cause before the jury was sworn to Juror Armstrong. They made extensive comments to the district court judge challenging Juror Armstrong before the jury had been sworn. I don't know about that, but how do we know that all the preemptory challenges were used? I believe the government's brief makes a statement that defense counsel had used all the preemptory challenges. I could get the page cite for you. I suppose the other way would be to review the record and add them up. I'm certain it was trial counsel's belief that the preemptory challenges had been used. Addressing that, Juror Armstrong had made extensive comments that suggested in his own mind that he connected a Pelham's case involving allegations of attempting to entice a minor to have sex over the Internet with a registered sex offender in his neighborhood. After making that connection, he went on to describe his constant fear of the sex offender in his neighborhood, how he and his wife were constantly vigilant about where that person was, the threat that that sex offender represented to his own children. And after making those extensive comments, he said that in his own mind, his discomfort was rising to the level of feeling that he could not be very fair. But then some time passed. He went home. I think it was over a weekend. He came back, and he told the court that he could put that aside and be a fair and impartial jury. I assume Your Honor is getting to the plein air point. Or perhaps not. At that point, when the judge denied the challenge for cause, did the defense have any preemptory challenges? Your Honor, all I can state, and this may be outside of the record, is that no doubt trial counsel believed they had used all their preemptory challenges and that the government's brief, which I could get you the page type for, asserts that point. At that point, did the defense have any preemptory challenges that had not been exercised? Your Honor, in my review of the record, I add up nine preemptory challenges as opposed to ten. I believe that defense counsel themselves thought that they had exercised all their preemptory challenges and that certainly if they believed they had had another preemptory challenge, they would have exercised it. The court keeps track of that. You are correct. I mean, I'm looking at the brief. The government's brief does say that all the preemptories were used, the jury was empaneled, the judge is now in the process of electing the alternate juries, and it is at that point the juror Armstrong speaks up. Yes. And I mean, the red brief may be wrong, but it says it very cleanly with the citation of the record. Yes, and I believe that is correct. That is certainly the government's assertion in the red brief. And at that point, I believe defense counsel, believing they had no other alternative, made the four-cause challenge to juror Armstrong based on his extensive comments, which I won't belabor. And at that point, the district court judge makes a ruling rejecting the four-cause challenge. Okay. We have that. You know, you've got a lot of important issues here. Yes, Your Honor. Moving on to I suppose at this point I'll address the government's 28-J letter regarding Fields v. Woodford. The government asserts that Fields v. Woodford forecloses the implied bias claim in this case. And with due respect, I believe it does not. Fields v. Woodford distinguishes United States v. ALSOP relied upon in Appellant's opening brief on the ground that the juror in Fields did not have the same personal connection as the juror in ALSOP. And in further conducting that analysis, the Court notes, the panel notes, that it was the juror's wife's experience, not his own. In this case, it's juror Armstrong's himself who had a personal connection to this case, in that he made the connection in his own mind between the registered sex offender in his neighborhood and the threat to his children a personal connection. I guess finally in addressing Fields, I'd note that Fields itself notes one factor to look to is the contemporaneous or continuing nature of the bias. Here, juror Armstrong identified what he believed to be a continuing nature of bias, something that had occurred both before the trial, presumably during the trial, and perhaps after the trial, that being the registered sex offender in his neighborhood. Yeah. Well, let me ask you, just moving on, going to the restrictions that were placed on this defendant concerning, you know, use of the Internet. Are you going to go into that? I'll go into it briefly, especially if the panel has very specific questions. Quite simply, I'd note that United States v. Reardon does not control this particular condition because United States v. Reardon, as well as United States v. Antelope, also cited by the government, both had a carve-out for Internet usage with the probation officer's approval. Both had a what? Both in United States v. Reardon and in United States v. Antelope, the condition involved in those cases allowed for Internet access with probation officer's approval. Well, doesn't Item 7 of the Terms and Conditions of Probation, as you read that item to cover that situation, says the defendant shall use only those computers and computer-related devices, screen user names, passwords, mail accounts, Internet service providers, as approved by the probation officer. So that wouldn't foreclose the defendant from going to the probation officer and saying, well, you know, this is, I'd like to be able to use my computer at home for these specific purposes, you know, get the weather reports or traffic conditions on the 101 and the 134 and all that. They could just go to the probation officer and ask them, will you approve that? I would respectfully submit that Condition 7 has to be read in conjunction with Condition 10. Condition 10 states the defendant shall use computer devices only within the scope of his employment. The defendant shall not access a computer for any other purposes. So that the ---- This says, upon approval, the probation officer may possess a computer within his home for the sole purpose of other family members or occupants. The defendant, however, shall not access or use those. Okay. Now that ---- But all these conditions of probation are all, you know, subject to supervision by the probation officer. There's nothing here that would preclude the defendant from saying, well, I've got this personal computer and I'd like to do this whether at home or away from work. And the probation officer, I would think, has discretion on whether to allow that or not. My reading of Condition 10, and it may differ than your Honor's, would be that the probation officer could not use his discretion to allow a computer within the home for use by appellant because it's specifically prohibited by the district court's judgment and commitment order. Who drafted this? It's unclear. It's certainly, obviously, signed by the district court. I can't speak ---- But I'd be very surprised if Judge Cooper drafted this. I myself would be surprised if Judge Cooper were the one who drafted this. I have to say, among other things, it's badly drafted. We're trying to figure out what it means because there seems to be a fairly ---- There are ---- ---- tension between Item 7 and Item 10. There are conflicting provisions where if you read 10 to modify 7, it is a greater restriction on appellant. Let's assume you're correct, counsel, that Items 10 and 11 modify 7 and preclude it from using a computer except at the office. It allows them then to have a computer at home but only for the purpose of other family members. What's the problem? Your Honor, I believe that that is an extension or that would represent an extension It's an extension of Reardon. Okay. What's the problem? The problem is it's a greater restriction of liberty than necessary on appellant for this case. Why? In this case, it works to deprive him wholly of a means of communication available. Well, it works to deprive him wholly of a means of communication used by every other person without the carve-out of probation office use. It is, in effect, a total deprivation and, therefore, falls astray of the statute that the condition itself not be overly restrictive. Okay. But ---- I don't mean to go in circles, Your Honor. A little conclusory, counsel. It seemed a little circular. Why is this necessary for him? He has other alternatives. He can pick up the telephone. He can ask other people to look things up for him if he needs to get to MapQuest. We have telephone books that he can get to. He can go to the public library. We have lots of other ways of getting information besides the Internet. I agree it's going to be very inconvenient, but the question is whether it's unnecessary, whether this is too restrictive. So why is this unnecessary? I guess I would first point to the definition of computers obviously includes cell phones, PDAs, other devices, and this would represent a complete ban during the period of supervision on those devices. That's clearly not right. Some cell phones have computer access. Other cell phones are like mine. Oddly enough, the only thing I can do on my cell phone is call people on the telephone. I'm sorry, Your Honor. It would restrict a cell phone with Internet access. I have Internet. Fine. You're going to lose yours, but I keep mine. I don't know how to use it. If you get this restriction, I'll loan you my cell phone. Yeah. Well, okay. But, you know, you can always – is there any reason that you can think of why Nicely couldn't ask his probation officer to go to the court if it's unclear from the conditions of probation, which are not well written, and I'm sure they were typed up by the – I guess it was by the court clerk or maybe because it's on a court form there. But they could always go to the court and ask the court if it's unclear to clarify it or ask the court to change the conditions of supervision. Those things happen all the time. I believe – I think on these computers now, there's ways of blocking access to it. Isn't there? I believe, Your Honor, that a motion to modify a condition of supervision would probably lie during the period of supervision. I nonetheless believe that the issue is squarely in front of the panel and ripe for decision at this point. And with that, unless the panel has further questions about the conditions of supervised release or the jury or the pending motion, I will reserve the balance of my time. Okay. Thank you. Good morning, Your Honors, and may it please the Court. Wes Hsu and Rupa Goswami on behalf of the United States. Your Honors, just to clarify some issues, factual issues that came up during the defendant's argument. It was everyone's belief in the courtroom that the defendant had used all of their peremptories by the time of the – by the time that Juror Armstrong raised this issue. As with the defense counsel's review of the record, I was unable to find all ten. But I – it's the government counsel's view that that's actually a piece that's missing from the record. You know, the courtroom deputy keeps track of all those. And so it shouldn't be hard. You know, probably somewhere in the file you'd know. But the defendant got ten. Yes. And the government gets six. Yes. Right. All of our records showed that all of the peremptories by the defendant had been used. Sometimes if they run out of peremptories, they can ask the court, Your Honor, can I have an extra peremptory? Yeah, okay, here's another one. You know, that happens too. The defendant certainly could have asked for that, did not ask for that. Now, this may be hyper sort of vigilant about this. I thought I just heard you tell me that you couldn't find all ten in reading the record. Is that right or wrong? My recollection is that I was unable to find all ten. I found the nine. Well, it may very well be that there were ten. I'm just now, in light of what you just told me, pointing out that the sentence at the bottom of page 8 of your brief says that the defendant then used his remaining peremptory challenges. I would prefer if the facts were as you just described them, that you'd said I can count nine and I think there were ten. I apologize for that, Your Honor. I – the reason that I made that statement is that I went back and counted later. My record of the jury selection process showed all ten of the defendants' peremptories used. Okay. Yeah, I mean, that's hyper technical, and I'm not really going after you on that. No, I understand. I understand the issue, Your Honor, and I apologize. That is absolutely a mistake on my part, but it – Don't worry. Don't worry. I wouldn't want you to lose any sleep over it. I probably will anyway, but thank you, Your Honor. Fine. Okay. You're absolved. Did the – were you the trial? Yes, Your Honor. Both Ms. Goswami and I were trial counsel. Well, you keep a little chart, don't you?  Check them off. Yes. My chart shows all ten defendants' peremptories used by this time. Also, just factually, Judge – I'm sorry. Juror Armstrong actually went overnight and thought about the issue. We started trial again the next day, and so he had – it wasn't over the weekend, but it was overnight that he had time to think about what Judge Cooper had told him. Also, on who wrote the actual conditions, as shown in the government sealed excerpt of record, it is actually contained in toto in a recommendation – a recommended sentence to the judge from the probation office. I have to – although I have to concede that I believe that probation writes some of those based on submissions from the United States Attorney's Office. But I think that our standard – Now we're getting down to it. That, of course, is not in the record. But not case-specific submissions from the U.S. Attorney's Office, but after input from the U.S. Attorney's Office on those conditions. So I guess ultimately the blame would lie possibly with us. So how do you read this? That is to say, do you read condition number seven as authorizing the probation officer to allow use of the computer in the home by this defendant or not? Or do you read numbers 10 and 11 as controlling and saying, no, that's an absolute prohibition, and number seven refers to something else? I'm not sure what else, but something else. It's the government's view that number 10 and 11 are an express prohibition that come after item seven, so that they would operate independently of item seven. And whatever contrary meaning item seven might have, it's inoperative? Yes. Because the – Well, you have to read these things as a whole, don't you? Yes. That's true, Your Honor. Yes. Yeah. So I don't have the probation report here, but was all that in the probation report? Not in the report itself, in the letter that accompanies the report, the recommendation letter, which is the only thing submitted as the government-sealed excerpt of record. Oh, that's sealed? Yes. Why do you seal it? Because it's not officially – it's my understanding that it's a private letter between the probation office and the court that the parties can cease depending on the judge. Some of the judges ask probation to serve the parties. Some of the judges do not. And so since it is not filed as part of the record, the government wanted to make sure that it stayed sealed. Well, I don't understand that. You see, the probation officers work for the court, not for the U.S. Attorney's Office. Isn't that right? That is very clear to me, yes, Your Honor. They work today. In reality, they both work together. Well, I – But they do now. The probation officers just – you know, they just – they've become very skilled at using the sentencing guidelines. They spend all their time doing that. They do, yes. Well, that is true, although – They're no longer social workers or mathematicians. Well, Your Honor, actually, it's been at least my experience recently that the probation office, at least in the Central District of California, is not simply looking at the sentencing guidelines. They are assessing the 3553 factors now. Can I get back to the – Yes. To the number 7, number 10, number 11. Reading it the way you do, so – and under your reading, there is an absolute prohibition on his having access to a computer, except at work. Yes. Why is that an appropriate restriction? In other words, this is Judge Vibey's question, but now addressed to you. Because of the integral nature of the Internet to this crime, and given that the defendant did not object at the time, and so the issue before this Court now is plain error, the government would submit that the Internet is not such a substantial right that would require, under the Alano standard for plain error review, that would require reversal. Okay. But the language out of 18 U.S.C. 3553A is not greater than necessary. Now, how do we align that with other standards that we use in the equal protection context, the First Amendment context, that suggests that we have to have the least restrictive alternative? Are those comparable standards? I think they would be comparable standards, yes. So not greater than necessary, you're going to say is sort of roughly equivalent to the least restrictive alternative? Well, the least restrictive alternative. Unfortunately, I have to confess, I'm not particularly familiar with the other standards, so I'm not – Then we need to ask, okay, well, what's the goal here? Is the goal to prevent him from accessing child pornography on the Internet, or is the goal to prevent him from using the Internet? Now, if the goal is to prevent him, in the interest of rehabilitation, in the interest of protecting the community, in the interest of whatever, from using the Internet, then this looks like that's about as good a fit as you're going to get. If the goal is to prevent him from accessing child pornography, then we've got to consider sort of the filtering questions and other alternatives that have been looked into by some other courts. This was not actually a child pornography case. There was no evidence of child pornography in this case. His use of the Internet was as a communications tool. And so for that reason, and going to America Online chat rooms and chatting with this person that he thought was a minor, and it is that precise communications tool that the government would seek to restrict in this case. I'm not personally familiar with software that would be able to distinguish between valid communication and invalid communication, but of course there's nothing in the record on that. And so what the government was seeking to do in this case, certainly in requesting conditions such as this, would be to restrict him from using the Internet as a communications tool in an attempt to find or groom other minors. Well, the one that he was talking to here was a government agent, huh? As it turned out, yes, Your Honor. Well, that's how you get them, right? Yes, Your Honor. Yeah. And so was there an entrapment defense here? There was none put on, Your Honor. No. It was a nice distinction that you made, counsel, that this was using the Internet as a communication tool, although condition number six does address his possession of any materials that contain pornography. So at least one of the express goals of his probation was to prevent access to pornography. Because of the general relationship between child pornography and child offenders, that was a concern of the government, yes. Was there any evidence that he had used any other means other than a computer for contacting minors in the fantasy game he was playing? After he had contacted them, there were attempted phone calls placed. But it was only after he had initially contacted them and communicated with them over Instamysk. Every communication was in some way related to computer communication. Yes. They all started on the Internet. The evidence of both of his contacts with minors began on the Internet in AOL chat rooms. Unless the Court has any further questions. Well, were these conditions explained to him? The — well, the letter in this case was disclosed to defense counsel prior to sentencing. The then — What did the judge say about these conditions? Nothing. Nothing. She just imposed the conditions that were — that had been disclosed in the letter. And there was no objection? That's correct. Didn't say to him, now you understand. You understand that you cannot ever, ever have use of a personal computer or use a computer at home. He never said that. No. So how would he really know if he read all this? To give fair notice of what's restricted. The government would submit that the first sentence of paragraph 11 is, in and of itself, is unequivocal. And that he would have to — You've got to read this thing as a whole. I mean, that's what struck me, you know. Then it shall use only, and then — I mean, I don't know much about computers. I'm sorry to say, related devices, screen names, passwords, et cetera, is approved by the probation officer. And I understand that there are filters you can put on these computers. There are restrictions you can put on them and all that. Yes, Your Honor, that is true, although I would submit that those filters and restrictions can always be circumvented. Well, all of this can be circumvented. He can go on someplace else and change his voice, you know, the way they do. Certainly, he could. Yeah, yeah. But given the lack of objection at the time, apparently it was — and it was clear enough that the defense counsel could now raise this issue. Well, maybe before they got down to seven, they fell asleep. You know, that could happen here, too, reading that. You know what Mark Twain would call this? Chloroform and print. I guess that would have to be spoken as well, since Judge Cooper did impose all the conditions morally. But the restriction in this case was important because of the nature of the crime that was involved. Because he was using it as a communications tool and not simply as a repository for child pornography, the best way to monitor him and the best way to supervise him is simply to prevent him from using a computer outside the scope of his employment. Let me ask you this. Yes, Your Honor. I don't have any cases off the top of my head, but I have seen it. I have seen opinions where the victim was actually a minor and not a law enforcement officer. Okay.  Thank you, Your Honor. First, I'd like to ‑‑ I believe the government just represented that the condition was also imposed orally. And as I just scanned the excerpts of record, and I'm specifically looking at excerpts of record 197 and 198, I actually don't see the conditions that we've just been discussing imposed orally. I see one of the conditions that's challenged in Appellant's opening brief, but I do not see imposed orally the conditions 7, 10, and 11 that we've just been discussing. Obviously, this was not raised in Appellant's opening brief. I'll be the first to admit it is not in there. Under United States v. Allen, if there isn't a conflict between the oral pronouncement of judgment and the judgment in commitment order, it would be the oral pronouncement that would control. Second, I would like to just briefly address the issue that appears to be on the panel's mind about these ‑‑ And what I'm saying is I believe the Court went over substantially almost all of the conditions, but conditions that were not gone over, as I read excerpts of record 197, 198, are the conditions we've just been discussing, 7, 10, 11. Now, I want to ‑‑ Counsel, on page 198, I see that the district court goes through a number of the conditions. You're not to possess any materials. You're to use only those computers, screen names, passwords, as approved by your probation officer. That would be condition number 7. Computers and computer‑related devices, including personal computers, that's also in condition 7. Any computer‑related devices are subject to search or seizure. You're to obtain prior approval before you remove, upgrade, reinstall, or repair any such computers. You're not to have access to computer‑by‑any material that relates to child pornography. A collection of the DNA sample, and now we don't have ‑‑ we don't have conditions 10 and 11 here. Your Honor, that was the point I was just trying to make. I'm sorry that I included 7 in my discussion. Specifically, conditions 10 and 11 don't appear to be in the oral pronouncement of judgment. However, they obviously, as we've been discussing, appear in the judgment and commitment order. And I'm sorry, you've argued that the oral governs the written or the written governs the oral? I believe that, pursuant to United States v. Allen, I'm sorry, I don't have a pin sign off the top of my head, it would be, if there is a direct conflict, I would suggest that this is a direct conflict in that the judgment and commitment order includes a condition that the oral pronouncement does not. It is the oral pronouncement that controls, because that is when the defendant is present upon the pronouncing of judgment. And then, briefly, I would just turn to whether the condition is not greater than necessary, and if that's continuous with least restrictive. And I would just add that there are two conditions that could have been imposed, and one that was imposed, that would nonetheless allow limited Internet access. One is random searches of Internet usage were imposed by the Court and would provide a way to monitor the defendant's Internet use. Second, as imposed in Reardon and Antelope, use with probation officer approval would also add to a not greater than necessary restriction on Internet usage. And with that, unless the panel has other questions, I'll submit. Can we ask the government to come back up and address this question on page 198? Sure. Mr. Hsu, would you address the counsel's discussion on page 198 and tell us if you've got a different understanding of this? No, Your Honor. I, after reviewing it now, I do agree with defense counsel that it appears that the district court, in reading off all of the, all of the. . . It only read to the middle of the second page and then stopped reading. Or there, or again, it's possible that there's something missing from the record. I don't know the answer to that, because line 22 is only a, looks to me like a sentence fragment. But I would, based on the record that is before the Court, it does appear that items 10 and 11 were omitted from the oral pronouncement. Okay. Well, what, and what happens when there's a discrepancy between what the judge has said? And we're here on plain error review, but the judge, he's not hearing something, evidently, that is in the order. Now what? I'm not familiar with the case that defense counsel has cited, and so I, I don't know the answer to that question. Well, that's, that's, that's not my understanding of the law. But, you know, I, I think that what, what the judge was doing, she was, she was not going to go read word for word for word for word. She was just going to give them an overview and, and emphasize the, the probation officer, the probation officer's role. That's all. So she was just hitting the high spots. Now you could make this part of the appeal go away if you were to agree that paragraphs 11, 10 and 11 would, on your motion, be modified to include the phrase upon, upon approval of the probation officer. At least that's how I read the case law. But once, once the approval of the probation officer is written into that, you're I can tell you this. Why don't you just stipulate that we should send the case back for resentencing  I, well, Your Honor. They'll give you a better chance to sit down and draft it. I would certainly be more amenable to agreeing to add the condition that, that, that item 1011B was prior approval of the probation officer, rather than having all of the conditions, even ones that weren't even raised by appellate counsel, sent back for resentencing. Okay. So we really, I mean, if you just think about it, even if you look at a standard set of forms of conditions of probation, they're all subject to the, to the, you know, what the defendant wants the defendant to do or how it should be handled. Not all of them, but, you know, like seek treatment as approved by the probation officer. Counsel, I'm trying to figure out, I mean, if we added the words except with the approval of the probation officer to 1011, that might, that might be your escape valve. And I'm asking now, is the government going to hold firm on its position here? Are you offering to make that adjustment? What, where are you leading us? I'm saying that it would not be required for it to be plain, for it to be plain error. However, I am willing to, in order to make that portion of the appeal go away, I'm actually, I am willing to stipulate that that, without prior approval of the probation officer, be added to Conditions 10 and 11. Okay. Except with approval of probation officer, I think it's probably the language that would be needed on 10 and 11, because everything else is a, is a prohibition on him. And prior approval, to make that clear. Except with prior approval. Prior approval. Fair enough. Yes. Except with prior approval. Okay. Thank you, Your Honor. Thank you, Your Honor. All right. And the last two items, Salazar, Salazar and Howard-Broomfield, they're submitted on the briefs. And for this session, the Court will, what's the word? Adjourn. Adjourn. Thanks. Quit.
judges: Pregerson, W. Fletcher, Bybee